**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**LEONARD PRESTON, #288382**                    **CIVIL ACTION**

**Versus**                                      **NO.  05-5477**

**BURL CAIN, WARDEN**                           **SECTION "C"**

## ORDER AND REASONS

Before the Court is a petition for habeas corpus by Leonard Preston ("Petitioner")

pursuant to 28 U.S.C. § 2254.  Petitioner, acting *pro se*, is seeking relief from his 1997

conviction for two counts of first degree robbery, simple robbery, and simple burglary, for which

he was sentenced to life in prison without benefit of parole, probation, or suspension of sentence

as a multiple offender under the Louisiana Habitual Offender Law.  As grounds for relief,

Petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel

because counsel (1) inadequately prepared for and presented a defense; (2) failed to file a timely

motion for continuance; (3) failed to file a timely motion to sever offenses; (4) failed to

adequately challenge the voluntariness of Petitioner's confession and the validity of his waiver of

rights; and (5) failed to adequately present an insanity or incompetence defense.  Petitioner

additionally claims that (6) Petitioner's indictment and conviction are unlawful because the

Louisiana Supreme Court declared the statutes governing the issuance of his indictment

unconstitutional in State v. Dilosa, 848 So.2d 546 (La. 2003).

1

Upon review of the record, the Court has determined that Petitioner's habeas corpus petition, although timely under the statute of limitations imposed by 28 U.S.C § 2254(d), is both unexhausted and without merit.  For the reasons set forth below, this petition is DENIED.

## I.      Procedural History

Petitioner Leonard Preston is incarcerated at Louisiana State Penitentiary in Angola, Louisiana.[1]  On March 25, 1997, Petitioner pled not guilty to attempted first degree robbery in violation of La. R.S. 14:64.1, two counts of first degree robbery in violation of La. R.S. 14:64.1, aggravated kidnapping in violation of La. R.S. 14:44, aggravated burglary in violation of La. R.S. 14:60, five counts of armed robbery in violation of La. R.S. 14:64, two counts of aggravated crime against nature in violation of La. R.S. 14:89.1, aggravated rape in violation of La. R.S. 14:42.[2]  Petitioner was convicted on October 22, 1997 of two counts of first degree robbery in violation of La. R.S. 14:64.1, simple robbery in violation of La. R.S. 14:65, and simple burglary in violation of La. R.S. 14:62.2.[3]  On October 31, 1997, the trial court sentenced Petitioner to thirty years imprisonment at hard labor for each of two counts of first degree robbery, seven years imprisonment at hard labor for simple robbery, and twelve years imprisonment at hard labor for simple burglary.[4]  At a multiple offender hearing on November 7, 1999, Petitioner's sentence was deemed a multiple offender and resentenced to life imprisonment without parole, probation, or suspension of sentence.[5]  Petitioner filed a motion for appeal on November 7, 1997.[6]  The Louisiana Fourth Circuit Court of Appeal denied relief, affirming in part and

---

[1] Fed. Rec. Doc. 3.
[2] State Rec. Vol. 1 of 4, Minute Entry, March 25, 1997.
[3] State Rec. Vol. 3, Transcript of the Trial of Merits, October 22, 1997.
[4] Fed. Rec., Sentencing Transcript*, October 31, 1997.
[5] State Rec. Vol. 2, Transcript of Motion Hearing, November 7, 1997.
[6] State Rec. Vol. 1, Minute Entry, November 7, 1997.

reversing in part Petitioner's conviction on November 10, 1999.[7]  Petitioner filed for rehearing on November 29, 1999,[8] and the appellate court subsequently denied relief on February 15, 2000.[9]  Petitioner then filed a Petition for Writ of Certiorari, Prohibition, and Mandamus to the Louisiana State Supreme Court on April 11, 2000.  The Supreme Court affirmed in part and reversed in part, vacating Petitioner's conviction and sentence for simple robbery and entering a verdict for attempted simple robbery on February 2, 2001.  The matter was consequently remanded to trial court, where further relief was denied on March 16, 2001.[10]  Petitioner applied for post-conviction relief on February 25, 2002.[11]  His application was denied in trial court on August 24, 2004,[12] and Petitioner resultantly filed for writ of review in state appellate court on September 22, 2004.[13]  Relief was denied on October 18, 2004,[14] and Petitioner subsequently filed a supervisory writ on November 17, 2004.[15]  The Louisiana Supreme Court denied Petitioner's application on August 19, 2005.[16]  Petitioner filed the instant federal application for habeas corpus on September 13, 2005.[17]

## II.     Timeliness

Petitioner's federal habeas corpus petition was timely filed, as the State notes in its response.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a habeas petitioner bring his or her § 2254 claims within one year of the date on which his or her

---

[7] State Rec. Vol. 2, Fourth Circuit Opinion on Appeal from Criminal District Court, Orleans Parish, November 10, 1999.
[8] State Rec. Vol. 2, Application for Rehearing, November 29, 1999.
[9] State Rec. Vol. 2, Fourth Circuit Opinion on Applications for Rehearing, February 15, 2000.
[10] State Rec. Vol. 2, Denial of Writ, March 16, 2001.
[11] State Rec. Vol. 4, Application for Post-Conviction Relief, February 25, 2002.
[12] State Rec. Vol. 4, Judgment on Application for Post-Conviction Relief, August 24, 2004.
[13] State Rec. Vol. 4, Supervisory Writ of Review, September 22, 2004.
[14] State Rec. Vol. 4, Denial of Relief, October 18, 2004.
[15] State Rec. Vol. 4, Writ of Certiorari, November 17, 2004.
[16] State Rec. Vol. 4, Denial of Writ, August 19, 2005.
[17] Fed. Rec. Doc. 5, September 13, 2005.

conviction or sentence became final.[18]  AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attaching a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2); see also Fields v. Johnson, 159 F.3d 914 (5th Cir. 1998).  "[A] properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing."  Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999) (quoting Lovasz v. Vaughn, 134 F.3d 146, 148 (3rd Cir. 1998)); Williams v. Cain, 217 F.3d 303 (5th Cir. 2000).

The Supreme Court noted that "finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  Clay v. United States, 537 U.S. 522, 527 (2003); see also Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003).  A defendant has ninety days to petition for writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court.  SUP. CR. R. 13(1).  As previously noted, the Louisiana Supreme Court denied Petitioner's Petition for Writ of Certiorari, Prohibition, and Mandamus on March 16, 2001.  Petitioner's

---

[18] 28 U.S.C. § 2244(d) provides:
> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of:
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the of the time for seeking such review;
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

conviction accordingly became final and AEDPA's one-year statute of limitations began to run on June 14, 2001, ninety days after the Louisiana Supreme Court's decision.

Petitioner filed his application for post-conviction relief on February 25, 2002, 256 days after the statute of limitations began to run.[19]  The statute of limitations was then tolled for the duration of time during which Petitioner's application for post-conviction relief was pending in the state judicial system.[20]  Petitioner filed for Writ of Certiorari on November 17, 2004, which The Louisiana Supreme Court denied on August 19, 2005.[21]  The limitations period resumed when the Louisiana Supreme Court denied Petitioner's application for Writ of Certiorari on August 19, 2005 and ran until he filed his federal habeas petition on September 13, 2005.  A total of two hundred and eighty-one days had elapsed on AEDPA's one-year statute of limitations by the time Petitioner filed his federal habeas petition.  Since there were eighty-four days left in the statutory period when Petitioner filed his habeas petition, the petition is timely.

## III.   Exhaustion

Petitioner has not exhausted all available state remedies as required by AEDPA.  Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.  28 U.S.C. § 2254(b)(1)(A).  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to

---

[19] State Rec. Vol. 4, Application for Post-Conviction Relief, February 25, 2002.
[20] The trial court denied Petitioner's Application for Post-Conviction Relief on August 24, 2004.  (State Rec. Vol. 4, Judgment on Application for Post-Conviction Relief, August 24, 2004.)  Petitioner subsequently filed in state appellate court for writ of review on September 22, 2004 (State Rec. Vol. 4, Supervisory Writ of Review, September 22, 2004); the writ was denied on October 18, 2004.  (State Rec. Vol. 4, Denial of Writ, October 18, 2004.)  Because Petitioner's applications for collateral review were all properly filed according to state procedural requirements, however, AEDPA's one-year statute of limitations did not run for this period of time.  28 U.S.C. § 2244(d)(2).
[21] State Rec. Vol. 4, Denial of Writ, August 19, 2005.  See Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995) (finding that a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing); see also State v. Froiland, 910 So.2d 956, 959 n. 4 (5th Cir. 2005).

the state's highest court in a procedurally proper manner according to state court rules.  Dupuy v. Butler, 837, F.2d 699, 702 (5th Cir. 1988).

The State argues that Petitioner has not fulfilled AEDPA's exhaustion requirement.  It first contends that Petitioner did not exhaust the fourth claim in this petition.  While Petitioner previously maintained that his confession was not free or voluntary and that he did not sign a waiver of rights form, Petitioner never claimed that his trial counsel was ineffective for not adequately presenting this argument.  The State additionally contends that Petitioner did not exhaust the fifth claim in this petition.  It maintains that, "though Petitioner argued that his *appellate* counsel should have argued that his sanity hearing was tainted in his *pro se* application for rehearing, it does not appear that Petitioner ever argued that *trial* counsel did not present an insanity defense."  The State concludes that these unexhausted claims render the petition a "mixed petition" that should be dismissed without prejudice.[22]

The Court agrees that Petitioner's fourth claim presents an unexhausted Sixth Amendment argument.  The Court also agrees that Petitioner's fifth claim is unexhausted. AEDPA provides, however, that, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Although the principles of comity create a strong presumption in favor of requiring exhaustion, AEDPA's exception to the exhaustion requirement prevents "useless litigation" in the state courts that could otherwise arise from rigorous adherence to the exhaustion requirement for meritless claims.  See Granberry v. Greer, 481 U.S. 129, 133 (1987).  The Court accordingly rejects the State's argument for dismissal, but has reviewed Petitioner's claim and determined that it is without merit.

---

[22] Fed. Rec. Doc. 9 Response to Habeas Corpus Petition, April 19, 2006.

**IV.    Statement of Facts**[23]

The Louisiana Fourth Circuit Court of Appeal summarized the facts revealed at trial as

follows[24]:

> T.B.[25] testified that at approximately 8:00 p.m. on December 20, 1996, she and
> her friend, D.M., were walking towards her car in the parking lot behind her apartment
> building on Josephine Street when she heard someone running up behind her.  She turned
> around and saw a man with a gun in his left hand running towards her.  The man
> demanded the women's purses and threatened to kill them.  T.B. gave him her purse, and
> D.M., who was on the other side of the car, put her purse on the trunk.  The robber took
> both purses and their jewelry.  T.B. testified that as they removed their jewelry, M.M., a
> neighbor who lived in a carriage house behind the apartment building, yelled from his
> window.  T.B. further testified that her assailant looked to see where the voice was
> coming from and then fired his gun and ran away.  T.B. testified that she identified
> Preston as the perpetrator at a physical lineup conducted by the New Orleans Police
> Department.
>
> M.M. testified that at around 8:00 p.m., he heard screaming.  He looked out of the
> window and observed two women and a man holding what at first appeared to be a knife.
> M.M. yelled at the man who then looked up, fired his gun in his direction, and ran.  M.M.
> testified that he later identified Preston from a photographic lineup as the man he
> observed on the night of the shooting.
>
> M.S. testified that on January 23, 1997, at around 6:40 p.m., she was entering into
> her apartment building at the corner of St. Mary and Prytania when a man approached her
> and asked her if she knew the person who lived in Apartment B.  She testified that she
> turned around and told him that there was no Apartment B.  When the man asked about
> another apartment, M.S. testified that she began to become suspicious.  Nevertheless, as
> she was walking into her apartment building, the man demanded that she give him her
> purse.  M.S. testified that she went into [the] apartment building and started screaming.
> Suddenly, the man grabbed her by her throat, swung her around and threw her onto the
> floor.  M.S. identified Preston in a physical lineup as the person who approached on that
> night.
>
> Ms. B. testified that on December 30, 1996, at approximately 9:10 p.m., she was
> doing laundry at a friend's apartment building at 1434 St. Andrew when she [noticed] a
> man's hand reaching into the laundry room and turn off the light.  However, she testified
> that because the light switch was a timer dial, the light could not be turned off.  When the
> man was unable to turn off the light, Ms. B. testified that the man walked into the laundry
> room and demanded that she give him her money or else he would kill her.  She also
> testified that she attempted to run past the man and call for help when he grabbed her by
> the throat and threw her onto the stairs.  Ms. B. further testified that she felt a metal
> object under the man's clothing when he got on top of her and started feeling her lower

---

[23] The Court of Appeal summarized only those facts pertinent to the four counts of which the defendant was found
guilty and not the other counts for which he was tried at the same time.
[24] State Rec. Vol. 2, Denial of Writ, November 10, 1999.
[25] The Court of Appeal referred to the victims by their initials in order to protect their identities.

pelvic area.  When she began scream for help, the man ran away.  Ms. B. testified that she later identified Preston as her assailant at a physical lineup.

Sergeant Christy Williams testified that she took a statement from Preston in which he admitted being left handed and he confessed to taking the purses of two women on Josephine Street on December 20.  Preston also admitted to taking the purse of a woman on January 23 on St. Mary Street.

## V.      Standard of Review

28 U.S.C. § 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).  Questions of fact are reviewed under § 2254(d)(2).  Id.

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively reasonable, and  . . . an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(d)(1).

## VI.   Ineffective Assistance of Counsel

Petitioner's first claim is that he was denied effective assistance of counsel because counsel (1) inadequately prepared for and presented a defense; (2) failed to timely file a motion for a continuance; (3) failed to timely file a motion for severance of offenses; (4) failed to adequately challenge the voluntariness of Petitioner's confession and the validity of his waiver of rights; and (5) failed to adequately present an insanity or incompetence defense.[26]

To prevail on an ineffective assistance of counsel claim, Petitioner must satisfy each prong of the following two-part test established in Strickland v. Washington, 466 U.S. 668 (1984):

> First, petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Under Strickland's performance prong, Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992) (quoting Strickland, 466 U.S. at 688). Because there are myriad approaches to providing effective representation, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel and "must demonstrate, by a preponderance of the evidence, that his

---

[26] Fed. Rec. Doc. 3, October 10, 2005, Supplemental Memorandum. Petitioner also contends that the trial court deprived him of effective assistance of counsel by denying his request for re-appointment of counsel. This argument is subsumed in Petitioner's ineffective assistance of counsel claim against his attorney. Furthermore, because this Court has not found his counsel was ineffective, Petitioner was not prejudiced and this argument is without merit.

counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

To demonstrate prejudice under Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome."  Id.  In fashioning the prejudice standard, the Strickland Court expressly rejected a more burdensome "outcome-determinative" standard requiring defendants to show that counsel's deficient conduct more likely than not altered the outcome in the case.  The prejudice inquiry instead asks whether defense counsel's errors rendered a proceeding's results unreliable and thus unfair to the defendant.  Id.; see also Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

**A.     Inadequate Preparation for Trial and Presentation of Defense**

Petitioner first argues that he was denied his Sixth Amendment right to effective assistance of counsel because his attorney inadequately prepared for and presented a defense.  The Court agrees with the state court in its finding that Petitioner does not satisfy the requirement for granting relief on a claim of ineffective assistance of counsel because he does not show that "his attorney made errors serious enough to characterize his performance as ineffective, and show that these errors prejudiced his defense."[27]  Petitioner alleges that "trial

---

[27] State Rec. Vol. 4, Judgment on Application for Post-Conviction Relief, June 6, 2002.  Petitioner's Application for Post-Conviction Relief was later denied and dismissed because Petitioner did not comply with the court's order to file specific reasons for his failure to raise the post-conviction claims in his direct appeal.  (State Rec. Vol. 4, Judgment on Application for Post-Conviction Relief, August 24, 2004.)

counsel was not interviewing his client and taking his time to prepare this case," and that trial counsel "advised Petitioner that he was under a heavy case load and was not able to devote a reasonable amount of time to this case."[28]  Petitioner offers little evidence to substantiate this claim, however, merely citing to a portion of the trial transcript in which the trial judge censures trial counsel for ordering the lunacy hearing transcript ninety-two days after the hearing's occurrence.[29]  Though the Court acknowledges that trial counsel's efforts to prepare a defense could be construed as untimely, the Court reiterates that Petitioner has failed to satisfy the prejudice prong of the Strickland test.  He does not show that he was prejudiced such that the outcome of the trial was rendered unreliable.  The Court therefore finds that this claim is without merit.

**B.      Failure to Timely File a Motion for a Continuance**

Petitioner's second argument is that his counsel was ineffective in failing to timely file a written motion for a continuance.  The state court notes Petitioner's contention that "his attorney made oral pretrial motions but did not follow up with written motions," but it does not account for its finding that this error falls short of ineffective assistance of counsel.[30]  The Court agrees with the state court's ruling, however, because Petitioner fails to show how counsel's performance prejudiced the outcome of the proceeding.  Petitioner offers no proof that a timely continuance would have been granted, nor does Petitioner give examples of defenses that could have then been successfully asserted.

Trial judges have broad discretion in ruling on motions for continuance.  See United States v. Correa-Ventura, 6 F.3d 1070, 1074 (5th Cir. 1993).   Whether a party complaining of inadequate preparation time was properly denied a continuance depends on (1) the amount of

---

[28] State Rec., Vol. 4 Supplemental Brief in Support of Pending Post Conviction.
[29] Id.
[30] State Rec. Vol. 4, Judgment on Application for Post-Conviction Relief, June 6, 2002.

preparation time available, (2) whether the defendant took advantage of the time available, (3) the likelihood of prejudice from a denial, (4) the availability of discovery from the prosecution, and (5) the complexity of the case.  United States v. Kelly, 973 F.2d 1145, 1148 & n. 3 (5th Cir. 1992); see also United States v. Scott, 48 F.3d 1389, 1393 (5th Cir. 1995).  Regarding the untimely filing of the motion for continuance, Petitioner concedes that counsel's only "excuse was the same that he gave the defendant several months prior to trial, that he was over worked."[31]  Petitioner's counsel made no additional efforts to substantiate his motion.  Because it is therefore unlikely that a timely motion for continuance would have been granted, Petitioner was not prejudiced by counsel's untimely filing.  Strickland indicates that, if the petitioner fails to demonstrate prejudice, the alleged deficiencies in the attorneys' performance need not even be considered.  See Strickland, 466 U.S. at 698-699, 104 S.Ct. at 2070; Schwander v. Blackburn, 750 F.2d 494, 502 (5th Cir. 1984).  The Court therefore finds that this claim is without merit.

### C.      Failure to Timely File Motion for Severance of Offenses

Petitioner's third argument is that counsel was ineffective because he failed to timely file a motion for severance of offenses.  The state court does not specifically refer to this argument in finding that Petitioner was not denied effective assistance of counsel; however, the Court finds that it is without merit.[32]

Petitioner claims that, although he "was convicted on both counts of first degree robbery, simple burglary and simple robbery, the presentation of the facts of all the thirteen offenses prejudiced him by confusing the jury."[33]  The record indicates that six alleged robbery victims testified at trial, and that one of the four guilty verdicts returned against Petitioner concerned a

---

[31] Fed. Rec. Doc. 3, Supplemental Memorandum, p. 13.
[32] State Rec. Vol. 4, Judgment on Application for Post-Conviction Relief, August 24, 2004.
[33] Fed. Rec. Doc. 1, October 10, 2005.  The defendant was charged with five counts of armed robbery, two counts of first degree robbery, one count of attempted first degree robbery, two counts of aggravated crime against nature, one count of aggravated rape, one count of aggravated burglary, and one count of aggravated kidnapping.

victim who declined to testify.  Petitioner contends that, "because of the presentation of the facts of so many robberies, and identifications, after the facts of the robbery of Ms. Malone, the jury could have easily forgotten that Ms. Malone was the only witness that did not testify and could not identify the defendant or confused the testimony of one of these witnesses with the facts of her complaint."[34]  Petitioner additionally argues that counsel's failure to file a motion for severance of offenses led the jury to erroneously convict Petitioner of the simple robbery of Tambra Biddy.  He notes, "Tambra Biddy testified that at the time of the incident she did not possess anything of value and nothing was taken from her . . . All other victims of the robberies testified that something of value was taken from them, yet the jury voted to find the defendant guilty of robbing Ms. Biddy."[35]

On the day of trial, counsel moved for a severance which was denied presumably at least in part because it was untimely. The Petitioner fails to establish prejudice.  Had counsel sought separate trials for each of Petitioner's thirteen counts, any resultant convictions could have predisposed subsequent juries to infer Petitioner's culpability.  Because the offenses were not severed, Petitioner could not accumulate potentially prejudicial convictions.[36]  The fact that the defendant was acquitted of a number of counts indicates the jury was able to keep the evidence separate and avoid prejudicial spillover.  Petitioner fails to show both that counsel's performance was unreasonable and that he was prejudiced by counsel's actions; therefore, the Court finds that his claim is without merit.

D.      **Failure to Adequately Challenge the Voluntariness of Confession and Validity of Waiver of Rights**

---

[34] Id.

[35] Id.

[36] Petitioner, however, was still tried and sentenced as a triple offender due to a 1991 conviction for possession of stolen property over $100 and a 1990 conviction for simple burglary.  (State Rec. Vol. 2, Transcript of the Sentencing Hearing, October 31, 1997.)

Petitioner's unexhausted fourth argument is that his counsel was ineffective in failing to adequately challenge the voluntariness of his confession and the validity of his waiver of rights form. Counsel did in fact file a motion to suppress the confession which was given an evidentiary hearing in state court and denied.[37]

Petitioner contends that his "illiteracy and the injury to his left hand establishes a serious doubt of voluntariness of the confession.  Furthermore, that the Petitioner understood the ramification and consequences of waiving such rights."[38]  This argument fails to establish, however, that Petitioner's Fifth Amendment rights were in fact violated or that Petitioner was prejudiced by counsel's performance; see Garland v. Maggio, 717 F.2d 199, 205-206 (5th Cir. 1983) (rejecting petitioner's claim that his counsel was ineffective for failing to file a motion to suppress on grounds that such a motion "would not have been successful [so defendant] suffered no prejudice.").

The standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice.  United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1347 (5th Cir. 1994).  If a person voluntarily, knowingly, and intelligently waives his constitutional privilege, a statement is not considered compelled within the meaning of the Fifth Amendment.  Id.  Although the record indicates that Petitioner is not completely literate, it also reveals that the Petitioner affirmed that he understood his rights and denied being forced to give a statement.[39]  Even had this not been the case, however, a waiver is not invalid simply because the suspect did not have

---

[37] State Rec. Vol. 1, p. 22.
[38] Fed. Rec. Doc. 3, Supplemental Memorandum, p. 16.  The state record indicates that Petitioner has difficulty reading and writing, is left-handed, and that, at the time of detainment, his left hand was injured.  (State Rec., Vol. 3, Transcript of the Trial of Merits, October 20-22, 1997.)
[39] State Rec. Vol. 1, Statement of Leonard L. Preston, January 25, 1997.

"a full and complete appreciation of all the consequences flowing from the nature and quality of the evidence in the case." Oregon v. Elstad, 470 U.S. 298, 317 (1985).

Given the number of similar offenses and their uncontroverted witness testimony, and the lack of evidence suggesting that his illiteracy or injury affected his confession or signing of the waiver, Petitioner cannot reach the prejudice level required by Strickland. The Court finds that Petitioner's ineffective assistance of counsel argument is without merit.

**E.      Failure to Present an Incompetence or Insanity Defense**

Petitioner's unexhausted fifth argument is that his counsel was ineffective in failing to present an incompetence or insanity defense. Petitioner argues that, "[u]nlike Cooper, *supra*, where their lawyer prepared and proffered the testimony of witnesses that knew of their I.Q. level of incompetence, counsel in the instant case did nothing. Counsel failed to investigate and present this relevant evidence . . . [i]f counsel would have pursued this issue, the outcome of the proceeding would have been different because a mentally ill person cannot waive such rights."[40] Petitioner also states that, "[i]f defense counsel would have pursued evidence of family members, teachers, and an expert on defendant's behalf, a different result would have been likely…"[41]

To sustain a claim of counsel's failure to investigate, however, a defendant must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Andrews v. Collins, 21 F.3d 612, 624 (5th Cir. 1994) (to satisfy the prejudice prong of Strickland, the defendant must "show evidence of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury," a different outcome would have resulted). Furthermore,

---

[40]Fed. Rec. Doc. 3, Supplemental Record, p. 17.
[41] Id.

"[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).

Petitioner must overcome a strong presumption that his counsel's decision in not calling family members, teachers, or experts as witnesses was a strategic one.  He must also establish that the uncalled witnesses would have testified in his favor.  Gomez v. McKaskle, 734 F.2d 1107, 1109-1110 (5th Cir. 1984).  Petitioner, however, never alleges that the witnesses would have corroborated his claim, nor does he specify the potentially mitigating factor to which the witnesses might have testified.  He instead broadly states, "Petitioner, whether incompetent, mentally ill or of low I.Q. level, could not have waived his rights."[42]  Upon review of the lunacy hearing transcript, the Court finds that it is unlikely that family members, teachers, or an additional expert would have provided Petitioner with favorable testimony.[43]  Therefore, Petitioner has neither satisfied his burden of establishing that his defense counsel's strategy was unreasonable, nor that the additional witnesses would have testified in his favor.  The Court cannot conclude that he was prejudiced by his counsel's failure to secure the trial testimony of additional witnesses, and therefore finds that this claim is without merit.

## VII.    Unlawful Indictment and Conviction

Petitioner's second claim is that his conviction is unconstitutional because the Louisiana Supreme Court held the laws governing the issuance of his indictment were unconstitutional in State v. Dilosa, 848 So.2d 546 (La. 2003).  Petitioner argues that because his indictment was

---

[42] Id.., p. 17-18.
[43] State Rec. Vol. 2, Transcript of the Lunacy Hearing, July 8, 1997.  Dr. Rafael Salcedo, an expert in the area of forensic psychology, testified that Petitioner was found free of mental disease or defect, competent to proceed to trial, and aware of the charges against him.

issued before the aforementioned unconstitutional articles were repealed, the Louisiana State

Supreme Court denied him his Fourteenth Amendment right to equal protection of the law.[44]

In <u>Dilosa</u>, the Louisiana Supreme Court held La.C.Cr.P. Arts. 412, 413, and 414 were

unconstitutional local laws in violation of Article III, Section 12 of the Louisiana Constitution,

which provides:

> "(A) Except as otherwise provided in this constitution, the legislature shall not pass a
> local or special law: . . . (3) Concerning any civil or criminal actions, including changing
> the venue in civil or criminal cases, or regulating the practice or jurisdiction of any court,
> or changing the rules of evidence in any judicial proceeding or inquiry before courts, or
> providing or changing methods for the collection of debts or the enforcement of
> judgments, or prescribing the effects of judicial sales."

Articles 412, 413, and 414 impose a specific procedure for the selection of grand juries by

Orleans Parish criminal courts.  Pertinent to Petitioner's claim is Article 413, which specifies:

"(C) In the parish of Orleans, the court shall select twelve persons plus a first and second

alternate for a total of fourteen persons from the grand jury venire, who shall constitute the grand

jury.  The court shall thereupon select one of the jurors to serve as foreman."  (La.C.Cr. P. Art.

413(c).)  This state law has since been amended due to the Supreme Court's ruling in <u>Campbell</u>

<u>v. Louisiana</u>, 523 U.S. 392 (1998), which held that the selection of the grand jury foreperson by a

single judge could support a defendant's allegation of an equal protection or due process

violation if there was discrimination in the selection process.  Today, the amended state law,

under La. C.Cr.P. Art. 413(B), requires the random selection of the foreman to prevent any

possibility that a judge might choose a grand jury foreperson in a discriminatory manner.

Petitioner argues that the cited statute, in its original form at the time of his trial, enabled

a potentially discriminatory grand jury selection process and was therefore violative of his

---

[44] Fed. Rec. Doc. 3.

Fourteenth Amendment rights.[45]  In order to prevail on his equal protection claim, however, Petitioner must prove that *purposeful* discrimination against African-Americans in the selection of a federal grand jury foreperson resulted in the "substantial underrepresentation of an identifiable group."  Rose v. Mitchell, 443 U.S. 545 (1979).  Following the three-part test established in Castaneda, Petitioner must first establish that the group is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied.  Second, Petitioner must prove the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time.  Finally, a selection procedure that is deemed susceptible to abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.  Once Petitioner has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.  See Castaneda v. Partida, 430 U.S. 482, 494 (1977).

Petitioner has failed to carry this burden.  As an African-American, he is indeed a member of a group recognizable as a distinct class capable of being singled out for different treatment under the laws.  Id. at 495.  Additionally, the trial judge's ability to choose the entire grand jury panel presumably rendered the selection process susceptible to abuse.  Turning to a consideration of the evidence offered by Petitioner in his attempt to prove sufficient underrepresentation to make out a prima facie case, however, the Court finds that Petitioner fails to meet his burden.  Petitioner cites only to the insufficient statistical reports of the experts in

---

[45] Fed. Rec., Doc. 3, Supplemental Memorandum, p. 19-24.

State v. Trainor, No. 01-KA-2799, and omits any information about the racial makeup of his grand jury.[46]  Petitioner alleges:

> The trial judge *could* select any individual he wanted, without challenge, based on any system he chose, i.e. race, gender, social background, and so forth.  The judge *could* also select people based on the fact that he simply thought they would agree with the prosecution.  Either way, and whether it was intentional or not, the judge was systematically excluding some select class of people from the fair cross-section of the community in violation of the defendant's Constitutional rights" (emphasis added).[47]

Absent any evidence of purposeful discrimination in the instant case, however, Petitioner fails to show substantial underrepresentation and his equal protection claim is not supported. The Court therefore finds that this claim is without merit.

**VII.    Conclusion**

Having considered the complaint, the record, and the applicable law, it is determined that Petitioner has not established that his state conviction and sentence present grounds for the relief requested.  Accordingly, **IT IS ORDERED** that the petition of LEONARD PRESTON for writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  Judgment will be entered accordingly.

New Orleans, Louisiana this 23rd day of October, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[46] Petitioner relies on the census of New Orleans from 1986 to 2000 and voter registration statistics from 1988 to 2000, culled from testimony and reports from Trainor.  Petitioner writes, "[Trainor experts] Dr. Silas Lee, Dr. Yvonne Osborne, and Dr. Linda Stelly found that white judges selected whites as forepersons 74% of the time and black 26% of the time, while black judges selected blacks 83% of the time and whites only 17% of the time… Although this data only represents the forepersons selected, because the judge was allowed to select the entire panel in New Orleans, it also shows the abusive and discriminatory process that the rest of the venire was susceptible to through the practice of allowing the judge to select the entire panel."  (Fed. Rec. Doc. 5, October 10, 2005.)
        This conclusion is unsupported.  Furthermore, the Louisiana Fourth Circuit Court of Appeal held that the Trainor defendants failed to make a prima facie case of an equal protection violation because the statistical evidence presented was factually and legally flawed.  State v. Fleming, 846 So.2d 114 (La.App. 4th Cir. 2003).
[47] State Rec. Vol. 4, Supplemental Brief in Support of Pending Post Conviction.